UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.K.,<br><br>Plaintiff,<br><br>v.<br><br>SSA COMMISSIONER,<br><br>Defendant. | Case No.  25-cv-05010-EMC<br><br>**ORDER**<br><br>Docket Nos. 12-13 |

Plaintiff A.K. seeks review of the Commissioner's final decision denying her Title II application for disability insurance benefits.  A.K. has exhausted her administrative remedies with respect to her claim of disability.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). A.K. asks that the final decision be reversed and the case remanded for additional administrative proceedings.  Having considered the parties' briefs and the administrative record, the Court hereby **DENIES** A.K.'s request for relief.

### I.       FACTUAL & PROCEDURAL BACKGROUND

On January 5, 2021, A.K. filed a Title II application for disability insurance benefits.  *See* AR 364-67 (application).  She claimed a disability onset date of January 4, 2017, *see* AR 366, and asserted both physical and mental impairments.  *See, e.g.*, AR 410 (Disability Report Adult, submitted on 1/8/2021) (listing the following physical and mental conditions that limit ability to work: depression; insomnia; bilateral arthritis in the knees; degenerative joint disease; chronic knee pain; runner's knee; bipolar disorder; and sciatica); AR 632 (prehearing memo filed with the ALJ on 3/19/2022) (identifying the following physical and mental impairments: bipolar disorder; obesity; tachycardia; coronary artery disease; hypertension; obstructive sleep apnea; degenerative

joint disease bilateral knees; autistic disorder; PTSD; degenerative disc disease lumbar spine; and diabetes mellitus).

As reflected in the administrative record, A.K. regularly sought treatment for her physical and mental conditions. With respect to physical conditions, A.K. suffered, in particular, from back and knee pain. She had some county in-home supportive services ("IHSS") to help her, *see* AR 386-91 (notice from county regarding change to IHSS), and at times used an assistive device to ambulate. *See, e.g.*, AR 1825 (medical record from Mr. Arroyo (chiropractor), dated 3/21/2022) (observing use of walker); AR 1311 (medical record from Dr. Gould, dated 12/2/2021) (requesting "Standard 2-Wheel Walker"); AR 1176 (medical record from Mr. Ebert (PA), dated 3/11/2021) (observing use of walker). Imaging, however, did not suggest any significant issues, and treating providers generally characterized the physical impairments as mild. *See, e.g.*, AR 1312 (medical record from Dr. Gould, dated 12/2/2021) (noting that A.K. "briefly brought up the idea of applying for 'federal disability,'" but, "based on her exam and imaging, there is nothing that I can see that would qualify for disability"); AR 1214 (MRI of lumbar spine on 4/13/2021) (noting "[m]ild multilevel degenerative changes . . . without definite evidence of significant central stenosis or focal nerve root impingement"); AR 1122 (medical record of Ms. Boley (NP), dated 3/30/2021) (noting full range of motion in "all joints" and "[v]ery mild tenderness to palpation over the anterior medial aspect of the [right] knee"); AR 1124 (MRI of right knee on 3/5/2021) (finding "[n]ormal MRI examination" – *e.g.*, "visualized bony structures show normal signal intensity[;] [t]he articular cartilage is maintained[;] [and] [t]here is no right knee joint effusion or popliteal cyst"); AR 763, 825 (medical record from Dr. Kuntz, dated 12/27/2020) (in evaluating right knee, noting "full range of motion without difficulty" and "[m]ild tenderness to palpation along the medial aspect of the knee"; finding, after x-ray, mild degenerative disease); AR 1705 (x-ray of bilateral knees on 6/23/2020) (finding "[m]ild joint space narrowing" in both knees; stating "[m]ild degenerative disease"); AR 828 (x-ray of left knee on 6/19/2020) (finding "[n]o acute fracture or dislocation[;] [j]oint spaces are maintained").

As for mental conditions, A.K. suffered from, *inter alia*, bipolar and anxiety disorders. *See, e.g.*, AR 1745 (consultative examination by Dr. Bowerman, dated 5/14/2022); AR 737, 739

(medical record from Dr. Goodwin, dated 1/14/2021).  Notably, in mid-2019, A.K. was put on a 5150 hold for suicidal ideation.  *See* AR 772 (medical record from Dr. Zernec, dated 5/26/2019); AR 709 (medical record from Dr. Lewerenz, dated 6/3/2019).  She was discharged after an assessment was made that there was no indication she was a danger to herself or others, or she would be unable to care for her basic needs at home.  *See* AR 710.  The incident appears to have attributable to a change in medication.  *See* AR 709 (medical record from Dr. Lewerenz, dated 6/3/2019) (in recounting history of present illness, stating that A.K.'s "suicidal thoughts occurred in the context of medication adjustments[;] her outpatient psychiatrist had taken her off Seroquel due to patient complaints of daytime sleepiness, and transitioning to Vraylar"); *see also* AR 718 (medical record from Ms. Mullis (MFT intern), dated 5/19/2020).  A treating physician, Dr. Goodwin, later took note that A.K. was reporting her depression was resolved.  He also found her mental status examination "unremarkable" on several visits.  *See, e.g.*, AR 726-27 (medical record from Dr. Goodwin, dated 4/6/2020).  According to Dr. Goodwin, A.K.'s "[p]resentation [was] consistent with a working diagnosis of bipolar I [disorder], in remission, most recent episode depressed."  AR 727 (adding that "[a]lternative diagnoses have been considered but are not supported by the current presentation"); *see also* AR 733 (medical record from Dr. Goodwin, dated 8/3/2020).  Dr. Goodwin also did not support A.K.'s request for disability based on anxiety or insomnia.  *See* AR 738 (medical record from Dr. Goodwin, dated 1/14/2021) (taking note of "request[] that she be placed on disability for social anxiety[;] this writer opined that anxiety is not a reason for disability"); AR 726 (medical record from Dr. Goodwin, dated 4/6/2020) (taking note of request for "disability for insomnia, which this writer did not support").

A.    First ALJ Decision

A.K.'s claim for disability was first presented to an ALJ in March 2022.  *See* AR 203 (ALJ decision).  *See* AR 166 (ALJ decision).  In July 2022, ALJ Mariani issued her decision denying benefits.  *See* AR 203-23.  The ALJ applied the five-step sequential process provided for by the federal regulations.  *See Corralejo v. Bisignano*, No. 25-2250, 2025 U.S. App. LEXIS 34007, at *1 (9th Cir. Dec. 31, 2025) ("Social Security regulations create a five-step sequential evaluation process to determine whether an individual is disabled and entitled to benefits.").

At step one, the ALJ found that A.K. had not engaged in substantial gainful activity since the alleged onset date of January 4, 2017. *See* AR 206 (noting that A.K. had made earnings in 2018 at the "SGA level"; but proceeding to the next step after "giving the claimant the benefit of the doubt").

At step two, the ALJ determined that A.K. had the following severe impairments: mild degenerative disc disease; mild osteoarthritis in both knees; bipolar disorder; autistic disorder (by history); anxiety and PTSD (by history); and obesity. *See* AR 206.

At step three, the ALJ concluded that A.K. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments (physical or mental) in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* AR 207.

At step four, the ALJ found that A.K. had the physical residual functional capacity ("RFC") to perform light work, with certain limitations (*e.g.*, stand/walk 6 hours in an 8-hour day and sit 6 hours in an 8-hour day). *See* AR 209. She did not address any mental RFC in her decision, even though her decision included review of medical records on mental conditions. Based on the physical RFC determination, the ALJ concluded that A.K. could perform her past relevant work as a teacher's aide, "as actually and generally performed," and as a personal attendant, but only as "generally performed." AR 220.

Although the ALJ held that A.K. was not disabled based on the analysis above, she also made an alternative finding at step five: specifically, given A.K.'s age, education, work experience, and RFC, A.K. was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 222.

A.K. appealed the ALJ's decision to the Appeals Council, which granted review. The Appeals Council vacated the ALJ's decision, identifying several issues:

- The ALJ had determined that A.K. had moderate limitations with respect to interacting with others and adapting or managing oneself. "However, [she] did not include corresponding mental limitations in the [RFC] assessment or explain why [A.K.] does not have any work-related mental limitations." AR 235 (Appeals Counsel decision).

4

United States District Court
Northern District of California

- Although the ALJ did not impose any limitations on "work-related mental activities," she found "partially persuasive" and "generally persuasive" two medical sources who opined that A.K. did have work-related mental limitations.  AR 235-36.  The ALJ failed to "explain why she did not adopt the mental limitations assessed in those medical opinions despite finding they are both persuasive."  AR 236.

The Appeals Council thus remanded for further proceedings.

B.     Second ALJ Decision

On remand, A.K.'s case proceeded before a different ALJ.  In May 2024, ALJ Kwon issued her opinion which again denied benefits.  *See* AR 17-35 (ALJ decision).

 At step one, the ALJ found that A.K. had engaged in substantial gainful activity in 2018 but not thereafter.  *See* AR 20; *see also* AR 17 (noting the alleged onset date was January 4, 2017).

At step two, the ALJ determined that A.K. had the following severe impairments: arthritis in both knees; degenerative joint disease; sciatica; depressive disorder; anxiety disorder; PTSD; autistic disorder; and obesity.  *See* AR 20.

At step three, the ALJ concluded that A.K. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments (physical or mental) in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* AR 21.

At step four, the ALJ found that A.K. had the physical RFC to perform light work, with certain limitations (*e.g.*, stand/walk 6 hours in an 8-hour day and sit 6 hours in an 8-hour day).  *See* AR 23.  She also provided a mental RFC: "[A.K.] retains the capacity for simple work with occasional interaction with others, with a maximum of occasional changes in a routine work setting."  AR 23.  Based on the physical and mental RFC determination, the ALJ could not perform any past relevant work.  *See* AR 33.

However, at step five, the ALJ concluded that, given A.K's age, education, work experience, and RFC, there were "jobs that exist in significant numbers in the national economy that [she] can perform."  AR 34.  The ALJ thus found that A.K. was not disabled.

## II.    DISCUSSION

A.    Legal Standard

After a final decision on a claim of disability has issued, the claimant may seek judicial review of that decision by a district court. *See* 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if the ALJ committed legal error or if the ALJ's findings are not supported by substantial evidence. *See Obrien v. Bisignano*, 142 F.4th 687, 693 (9th Cir. 2025).

"Substantial evidence" is a legal term of art. It "means only[] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). In conducting its review, a court evaluates "the record as a whole, . . . weighing both the evidence that supports and detracts from the ALJ's conclusion" to determine if substantial evidence supports a finding. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence supports "more than one rational interpretation," a court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

In the case at bar, A.K. essentially argues that the ALJ erred in her assessment of three medical source opinions: Terri Vazquez, MA *see* AR 1719-21; J. Allen, MD, *see* AR 147, 151; and Justin Ebert, PA. *See* AR 1162-63. Title 20 C.F.R. § 404.1520c addresses how the Social Security Administration considers medical opinions:

> (a)    . . . . We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). . . .
>
> . . . .
>
> (c)    . . . .
>
> > (1)    Supportability. The more relevant the objective medical evidence and supporting explanations

presented by a medical are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be.

(2)    Consistency.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be.

(3)    Relationship with the claimant [*e.g.*, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship] . . . .

. . . .

(4)    Specialization.  The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

(5)    Other factors.  We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding.  This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. . . .

20 C.F.R. § 404.1520c(a).[1]

/ / /

/ / /

_____

[1] In her papers, A.K. also cites 20 C.F.R. § 404.1545(e) which provides that,

[w]hen you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in Appendix 1 of this subpart, we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.

20 C.F.R. § 404.1545(e).

B.      Medical Opinions – Mental

The Court begins with its analysis of Ms. Vazquez.  Ms. Vazquez was a treating medical source.  She completed a medical source statement for A.K., addressing A.K.'s mental condition.  *See* AR 1719-21 (medical source statement from Ms. Vazquez, dated 11/24/2021).  Ms. Vazquez stated that she had treated A.K. from August-November 2021 and diagnosed her with bipolar disorder, current episode manic without psychotic features, depression, and PTSD.  She listed A.K.'s symptoms as, *e.g.*, feelings of guilt and despair, anxiety, manic episode, pressured speech, and social isolation.  Ms. Vasquez opined that A.K. was moderately impaired with respect to the ability to perform activities of daily living; to maintain social functioning; and to maintain concentration, persistence, or pace.  She also opined that A.K. had experienced episodes of decompensation ("Seldom (one or two in one year, each lasting for two weeks)"); that the episodes would cause A.K. to withdraw or to experience an exacerbation of signs or symptoms; that A.K. had a history of at least one year of inability to function outside of a highly supported living situation; that, even a minimal increase in mental demands or change would cause A.K. to decompensate; and that, if A.K. became employed, A.K. would likely miss two days per month from work due to psychologically based symptoms.  *See* Op. Br. at 14 (emphasizing that Ms. Vaquez's opinions supported Paragraph C criteria for purposes of step three of the five-step sequential process).

The ALJ found Ms. Vazquez's opinions "partially persuasive."  She first noted that the opinions were "only marginally supported with the claimant's diagnoses and symptoms."  AR 29 (ALJ decision).  She then noted that the opinions were not consistent with other evidence of record, including but not limited to opinions rendered by a doctor who conducted a consultative examination.  *See* AR 1736-46 (psychological report from Dr. Bowerman, dated 5/14/2022).  Based on the totality of the evidence, the ALJ found that A.K. was able to do simple work, have occasional interactions with others, and have occasional changes in routine work setting.  *See* AR 29-30 (ALJ decision).

/ / /

/ / /

8

The ALJ's conclusion that Ms. Vazquez's opinions were only partially persuasive is supported by substantial evidence.[2]  First, as the ALJ noted, although Ms. Vazquez stated in the medical source statement what A.K's diagnoses and symptoms were, she did not cite any specifics to support her opinions on A.K.'s limitations, such as a mental status examination or earlier treatment notes.  *See R.W. v. Comm'r of Soc. Sec.*, No. 25-cv-02302-EMC, 2025 U.S. Dist. LEXIS 254050, at *26 (N.D. Cal. Dec. 3, 2025) (stating that "supportability is ultimately focused on how a doctor reaches the medical opinion" – *i.e.*, how did the doctor reach his or her findings).  Nor has A.K. pointed to any treatment records from Ms. Vazquez from the lengthy administrative record.  Indeed, as the government points out, it is not clear that Ms. Vazquez ever directly treated A.K. herself.  *See* Resp. Br. at 1 ("There is no evidence of any treatment from Ms. Vazquez in the record.").

Second, with respect to consistency, the ALJ did not – as A.K. contends – cherry pick evidence from the administrative record or otherwise selectively cite facts that "highlighted largely unremarkable symptoms."  Op. Br. at 16.  Notably, the ALJ did not cite to just a handful medical records.  Rather, she cited to a number of records and from both consulting examiners (*e.g.*, Dr. Bowerman) as well as treating providers, including from most, if not all, of the facilities where A.K. sought treatment (*e.g.*, Hillside, Redwood Quality, Santa Cruz Behavioral Health, Adventist, and Watsonville Community Hospital).  *See* AR 29-30 (ALJ decision).  *See, e.g.*, AR 1745-46 (Dr. Bowerman) (after conducting mental status examination and several tests, such as the Wechsler Adult Intelligence Scale and Memory Scale, concluding that A.K. had only mild or moderate impairments); AR 695 (Hillside) (noting normal memory as part of physical neurological examination); AR 1108 (Redwood Quality) (reflecting the following based on mental status examination: avoids eye contact, restless motor activity, pressured and excessive speech, but oriented, intellectual functioning unimpaired, memory unimpaired, average fund of knowledge,

---

[2] A.K. suggests that the ALJ should have considered Ms. Vazquez's opinions at step three of the five-step sequential process because Ms. Vazquez concluded that A.K. had satisfied the Paragraph C criteria.  The failure to address Ms. Vazquez's opinion at step three was, at most, harmless error.  The ALJ did address Ms. Vazquez's opinions as part of the assessment (at step four) of A.K.'s RFC.

United States District Court
Northern District of California

appropriate affect, intact concentration, intact abstractions, intact judgments, adequate insight, and no apparent hallucinations or delusions or ideations); AR 1799-800 (Redwood Quality) (reflecting the following based on mental status examination: good eye contact, cooperative, normal speech, normal/linear thought process, alert, oriented, good cognitive ability, euthymic/normal mood, normal range of affect, and no delusions); AR 2121 (Santa Cruz County Behavioral Health) (reflecting the following based on mental status examination: good eye contact, able to engage in meaningful 1-to-1 conversation, normal speech, affect within normal limits, circumstantial and tangential thought process at times, no delusional references, and cognition within normal limits). Furthermore, A.K. glosses over the fact that the ALJ did find fairly restrictive mental limitations for A.K. – concluding that she was able to do simple work only and could only have occasional interactions with others or changes in routine work setting. *See* AR 29-30. This is not a situation where the ALJ found no mental limitations at all or only minor limitations. *Cf.* AR 235-37 (Appeal Council decision) (remanding because the first ALJ decision did not address mental limitations). The limitations found by the ALJ were supported by the medical records.

Equally tellingly, the evidence that A.K. cites in her favor does not establish the ALJ erred. A.K. points to a therapist note from July 2019 but this was still shortly after she was hospitalized in May/June 2019. *See* Op. Br. at 17; AR 715 (medical record from Ms. Singh (counselor), dated 7/6/2019) (stating that A.K. "is currently experiencing a manic episode, evidenced by expansive mood and increased energy accompanied by grandiosity (observed), decreased need for sleep ('I haven't been able to sleep, maybe 3-4 hours per might'), pressured speech (observed), flight of ideas (observed) and distractability (observed)"; A.K.'s "symptoms have resulted in significant impairments to her daily living (marked mood episodes), social (tendency to isolate when depressed and additional difficulty navigating social interactions) and occupational (difficulty maintaining employment due to mood episodes complicated by her deficits in social-emotional reciprocity) functioning"). The record indicates that that incident was somewhat unique as A.K. herself attributed the incident to a medication change. *See* AR 718 (medical record from Ms. Mullis (MFT intern), dated 5/19/2020); AR 709 (medical record from Dr. Lewerenz, dated 6/3/2019). Furthermore, contrary to what A.K. suggests, the record reflects improvement

10

thereafter, with one of her treating physicians (Dr. Goodwin) later stating, *e.g.*, that her bipolar disorder was in remission. *See infra*.

A.K. also relies on a medical record from a MFT intern in May 2020. *See* Op. Br. at 17-18; AR 719 (medical record from Ms. Mullis, dated 5/19/2020) (stating that A.K. "has a history of manic episodes (racing thoughts, decreased need for sleep, decreased appetite, increased goal-directed behavior) lasting days at a time" and "also experiences depressive episodes (persistent depressed mood, decreased interest in most activities, lethargy, suicidal ideation) lasting months at a time and resulting in her May 2019 involuntary psychiatric hospitalization"). But notably, that record conflicts with the records of her main treating physician (Dr. Goodwin) – who, it appears, provided treatment to A.K. at the same facility. Those records indicate mild or no disability based on A.K's mental condition. *See, e.g.*, AR 727, 730, 733, 736, 739 (medical records from Dr. Goodwin, dated 4/16/2020, 5/7/2020, 8/3/2020, 9/24/2020, and 1/14/2021) (stating that A.K.'s "[p]resentation [was] consistent with a working diagnosis of bipolar I [disorder], in remission, most recent episode depressed"; adding that "[a]lternative diagnoses have been considered but are not supported by the current presentation"); *see also* AR 726, 733 (medical records from Dr. Goodwin, dated 8/3/2020 and 4/16/2020) (not supporting A.K.'s request for disability based on anxiety or insomnia); AR 1114-16 (medical source statement from Dr. Goodwin, dated 3/23/2021) (stating that A.K.'s ability in all areas of psychological functioning associated with work tasks was "good" – defined as "[t]he effects of the mental disorder do not significantly limit the individual from consistently and usefully performing the activity").

The Court therefore finds no error with respect to the ALJ's determination as to Ms. Vazquez's mental impairments.

C. <u>Medical Opinions – Physical</u>

A.K. argues next that the ALJ erred in evaluating two medical source opinions related to her physical condition. The two medical sources are Dr. Allen (a state agency consultant) and Mr. Ebert (a treating PA). Dr. Allen opined, *inter alia*, that A.K. could carry or lift 20 pounds occasionally and 10 pounds frequently and could stand or walk, as well as sit, about 6 hours in an 8-hour work day. He also stated that A.K. "[m]ay use [an] AD [assistive device] for long

United States District Court
Northern District of California

distances/uneven terrain." AR 151 (medical notes from Dr. Allen, dated 5/18/2021). Mr. Ebert, in turn, provided a medical source statement. He opined, *inter alia*, that A.K. could lift or carry less than 10 pounds occasionally or frequently, could stand or walk less than 2 hours in an 8 hour-work day, and could sit less than 6 hours in an 8-hour work day. Mr. Ebert also noted that A.K. used an assistive device – specifically, a walker – which was self-prescribed, although medically necessary as it improved stability. *See* AR 1162 (medical source statement from Mr. Ebert, dated 4/22/2021).

With respect to Dr. Allen, the ALJ found his opinions partially persuasive. *See* AR 31 (ALJ decision). As for Mr. Ebert, the ALJ found his opinions unpersuasive. *See* AR 30. The ALJ pointed out that his medical source statement was not supported by any medical findings, *see* AR 30 (stating that the opinions were not "supported with an explanation"); rather, the statement simply referred to, *e.g.*, "[patient] reported pain" in support of the limitations stated. *See* AR 1162-63 (medical source statement from Mr. Ebert, dated 4/22/2021).

The ALJ also found Mr. Ebert's opinions inconsistent with the medical records from other medical sources. For example, although there were some references to slow and guarded movements and observed use of a cane or walker, *see, e.g.*, AR 1838 (medical record from Dr. Alvord, dated 5/14/2022) (observing that A.K. "walks with a cane with a compensated gait"); AR 1811 (medical record from Mr. Arroyo (chiropractor), dated 2/7/2022) (noting that A.K. used a walker and that her movements were slow and guarded); AR 1311 (medical record from Dr. Gould, dated 12/2/2021) (requesting "Standard 2-Wheel Walker"); AR 1922 (medical record from Mr. Arroyo (chiropractor), dated 3/22/2021) (noting that A.K. used a walker and that her movements were slow and guarded), there were other instances in which A.K. did not use an assistive device and where her gait was described as essentially normal. *See, e.g.*, AR 1857 (medical record from Mr. Arroyo (chiropractor), dated 9/14/2022) (commenting that A.K. was "[n]o longer using cane" and her movements were "[u]nremarkable"); AR 1740 (medical record from Dr. Bowerman (consulting examiner), dated 5/14/2022) (observing that A.K. "did not use a cane or other assistive device to aid in walking"); AR 1003 (medical record from Mr. Ebert, dated 12/30/2020) (noting "mild soft tissue tenderness to the medial aspect of the [right] knee" but

"otherwise unremarkable"); AR 763 (medical record from Dr. Kuntz, dated 12/27/2020) (stating that A.K. was "[a]mbulatory without antalgic gait"); AR 867 (medical record from Mr. Ebert, dated 5/1/2020) (in evaluating musculoskeletal condition, stating "[v]isual overview of all four extremities is normal"); AR 773 (medical record from Dr. Calderon, dated 5/26/2019) (stating that S.K. had full range of motion for all major joints and "[n]ormal gait"); *cf.* AR 1282 (medical record from Dr. Griffin (consulting examiner), dated 9/10/2021) (stating that A.K. "came in with a Rollator device which she states that she bought herself because the primary care provider stated that Medicare would never pay for it"; "[d]escription of ambulation with the device was normal"). Moreover, as indicated above, medical records indicated that A.K.'s physical deterioration related to her back and knees was mild. *See also* AR 31 (ALJ decision) (noting that "[i]maging . . . revealed only mild degenerative changes"). Thus, the ALJ concluded that the "use of an assistive device, given the inconsistencies in records, along with [A.K.'s] generally normal strength, is not medically necessary." AR 31.

A.K. challenges the ALJ's assessments of Dr. Allen and Mr. Ebert, putting particular emphasis on her use of an "assistive device[] throughout the adjudicated period." Op. Br. at 20. She criticizes the ALJ for not including the assistive device as part of her physical RFC. But as noted above, there were instances in the record where A.K. was noted to be walking without such a device and even Mr. Ebert admitted that the use of a device was self-prescribed (although he also characterized the device as medically necessary for improved stability). Another treating provider (Dr. Gould) did go on to prescribe a standard 2-wheel walker for A.K, *see* AR 1311 (medical record from Dr. Gould, dated 12/2/2021), but notably he also did not consider the walker overly limiting as reflected by his express statement that he did not see anything that qualified her for disability. *See* AR 1312. And imaging did not suggest anything more than mild degenerative changes. *See, e.g.*, AR 1214 (MRI of lumbar spine on 4/13/2021) (noting "[m]ild multilevel degenerative changes . . . without definite evidence of significant central stenosis or focal nerve root impingement"); AR 1124 (MRI of right knee on 3/5/2021) (finding "[n]ormal MRI examination" – *e.g.*, "visualized bony structures show normal signal intensity[;] [t]he articular cartilage is maintained[;] [and] [t]here is no right knee joint effusion or popliteal cyst"); AR 1705

13

(x-ray of bilateral knees on 6/23/2020) (finding "[m]ild joint space narrowing" in both knees; stating "[m]ild degenerative disease"); AR 828 (x-ray of left knee on 6/19/2020) (finding "[n]o acute fracture or dislocation[;] [j]oint spaces are maintained").

Ultimately, another ALJ could well have reached an opinion different from the ALJ in the case at bar, but that does not mean that the ALJ's opinion here is not supported by substantial evidence. If the evidence supports "more than one rational interpretation," a court must uphold the ALJ's decision. *Burch*, 400 F.3d at 680-81; *see also Blanchard v. Bisignano*, No. 24-4359, 2025 U.S. App. LEXIS 24853, at *4 (9th Cir. Sept. 25, 2025) ("Substantial evidence supports the ALJ's consideration of the medical opinions. Where conflicting evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Kunish v. O'Malley*, No. 23-2844, 2024 U.S. App. LEXIS 27405, at *1-2 ("The ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' And if the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'"). Because the ALJ's evaluation of Dr. Allen and Mr. Ebert is supported by substantial evidence, the Court finds no error here. *See Blanchard*, 2025 U.S. App. LEXIS 24853, at *4-5 (acknowledging that several doctors "came to varying conclusions" on plaintiff's condition but concluding that ALJ's finding was supported by substantial evidence: "the ALJ weighed [the] competing opinions, determining which opinions were most consistent with the overall record," and ALJ discounted three medical sources favorable to plaintiff because they "were less thorough, lacked citations to evidence from the relevant time frame, and conflicted with the rest of the record").

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

III.    CONCLUSION

For the foregoing reasons, the Court denies A.K.'s request for relief. The Court instructs the Clerk of the Court to enter a final judgment in accordance with this decision and close the file in the case.

This order disposes of Docket Nos. 12-13.

**IT IS SO ORDERED**.

Dated: March 2, 2026

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

15